IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:21-CV-31-D

CHURCH MUTUAL INSURANCE )
COMPANY, )
)
Plaintiff, )
)
v. )                                              **ORDER**
)
STORM TEAM CONSTRUCTION, INC., )
d/b/a STORM TEAM USA, )
)
Defendant. )

On July 13, 2021, Church Mutual Insurance Company ("Church Mutual" or "plaintiff") filed

suit against Storm Team Construction, Inc. ("Storm Team" or "defendant") seeking injunctive and

declaratory relief arising from an insurance dispute [D.E. 1]. On August 13, 2021, Storm Team filed

an answer and asserted counterclaims for breach of contract and violations of the North Carolina

Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1 et seq. ("UDTPA") [D.E. 9].

On November 30, 2021, the court granted Church Mutual's motion to dismiss Storm Team's

UDTPA claim, denied Storm Team's motion to amend, and dismissed Storm Team's UDTPA claim

without prejudice [D.E. 24].

On November 9, 2021, the court entered a scheduling order [D.E. 21]. In the scheduling

order, the court stated that any motion to join additional parties and to amend pleadings must be

made by November 26, 2021, and that any motion made after that date must meet the standards in

Federal Rules of Civil Procedure 15 and 16. See id. at 2. When the court entered its scheduling

order, Storm Team had timely filed its motion for leave to amend, and that motion was still pending

before the court. In its order denying the motion to amend, the court stated that if Storm Team transferred some or all of its interests in this lawsuit back to Murfreesboro United Methodist Church ("MUMC"), as Storm Team had proposed doing, see, e.g., [D.E. 14] 3, then Storm Team could "again seek to amend its pleadings under Rule 15 and seek to substitute Murfreesboro United Methodist Church as a party under Rule 25." [D.E. 24] 3. The court did not address whether it would allow such amendments or substitution. See id.

On January 21, 2022, Storm Team moved to substitute MUMC as the defendant and counterclaimant in this action and moved to amend its answer and counterclaims against Church Mutual [D.E. 25]. On February 11, 2022, Church Mutual responded in opposition [D.E. 26]. On March 28, 2022, the court granted Church Mutual's motion to extend the discovery deadlines. See [D.E. 28]. As explained below, the court grants Storm Team's motion to substitute and grants MUMC leave to amend its answer and counterclaims.

I.

Storm Team moves to substitute MUMC as the defendant and counterclaimant in this lawsuit. See [D.E. 25] 2–3.[1] Church Mutual sued Storm Team after MUMC transferred to Storm Team its interest in certain insurance claims under MUMC's policy with Church Mutual. See [D.E. 1-2]. On December 30, 2021, Storm Team transferred that interest back to MUMC, see [D.E. 25-3], and now seeks to substitute MUMC as the defendant and counterclaimant under Federal Rule of Civil Procedure 25(c). In opposition, Church Mutual argues substitution is improper because Storm Team failed to serve MUMC with the motion to substitute and because Storm Team retains a

---

[1] This case arises under the court's diversity jurisdiction. See [D.E. 1] ¶¶ 2–6; [D.E. 9] 6. Therefore, the court applies North Carolina substantive law and federal procedural rules. See Erie R.R. v. Tompkins, 304 U.S. 64, 78–80 (1938); Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002).

2

financial interest in this litigation. See [D.E. 26] 5–7.

Under Federal Rule of Civil Procedure 25(c), "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(3)." Fed. R. Civ. P. 25(c). In turn, Rule 25(a)(3) states that a motion to substitute "must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4." Fed. R. Civ. P. 25(a)(3).

Rule 25(c) is a procedural mechanism that does not affect the substantive rights of the parties or the transferee. See Citibank v. Grupo Cupey, Inc., 382 F.3d 29, 32 (1st Cir. 2004); ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc., 53 F.3d 186, 191 (8th Cir. 1995); Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc., 13 F.3d 69, 71–72 (3d Cir. 1993); SEC v. Collector's Coffee Inc., 451 F. Supp. 3d 294, 297–98 (S.D.N.Y. 2020); Branch Banking & Tr. Co. v. Morehouse, C/A No. 10-0912 DAR, 2011 WL 13257608, at *3–4 (D.D.C. Oct. 11, 2011) (unpublished). "The rule is designed to allow an action to continue unabated when an interest in a lawsuit changes hands, rather than requiring the initiation of an entirely new lawsuit." ELCA Enters., 53 F.3d at 191 (quotation omitted); see Rodríguez-Miranda v. Benin, 829 F.3d 29, 40 (1st Cir. 2016) ("[T]he rule serves as a procedural mechanism to bring a successor in interest into court when it has come to own the property in issue" (quotation omitted)); In re Covington Grain Co., Inc., 638 F.2d 1362, 1364 (5th Cir. 1981); Collector's Coffee Inc., 451 F. Supp. 3d at 297–98; Branch Banking & Tr. Co., 2011 WL 13257608, at *4. "Substitution of a successor in interest or its joinder as an additional party under Rule 25(c) is generally within the sound discretion of the trial court." Prop-Jets, Inc. v. Chandler, 575 F.2d 1322, 1324 (10th Cir. 1978); see Citibank, 382 F.3d at 32; Burka v. Aetna Life Ins. Co., 87 F.3d 478, 482 (D.C. Cir. 1996); ELCA Enters., 53 F.3d at 190; Luxliner P.L. Exp., 13 F.3d at

3

71–72; E. I. du Pont de Nemours & Co. v. Lyles & Lang Constr. Co., 219 F.2d 328, 332 (4th Cir. 1955); Collector's Coffee Inc., 451 F. Supp. 3d at 297–98.

The parties agree that Storm Team transferred its interest in the storm-damage claims under MUMC's insurance policy with Church Mutual back to MUMC. See [D.E. 25-3]. Thus, as to Church Mutual's claims against Storm Team, MUMC would bear the burden of an adverse judgment. See Maldonado v. Valsyn S.A., 434 F. Supp. 2d 90, 92 (D.P.R. 2006); Moody v. Albemarle Paper Co., 50 F.R.D. 494, 498 (E.D.N.C. 1970) (allowing Rule 25(c) substitution when "any or all of the parties sought to be added or joined have or could have the burden of liability in the event of a determination of liability"). And as to Storm Team's counterclaim against Church Mutual, MUMC would benefit from any favorable ruling. Accordingly, the court grants Storm Team's motion to substitute and orders that MUMC be added as the defendant and counterclaimant in place of Storm Team.

In opposition, Church Mutual argues substitution is improper because Storm Team failed to comply with Rule 25(c)'s requirement to serve nonparties (i.e., MUMC) with the motion to substitute using the procedures in Rule 4. See [D.E. 26] 5; see also Fed. R. Civ. P. 25(a)(3), (c). Service incident to bringing a nonparty into a lawsuit, which substitution or joinder of a nonparty under Rule 25(c) effectively does, implicates the court's jurisdiction over that party. See Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350–51 (1999); Life Techs. Corp. v. Govindaraj, 931 F.3d 259, 264–65 (4th Cir. 2019); Lobacz v. United States, No. 5:19-CV-453-D, 2022 WL 821160, at *4 (E.D.N.C. Mar. 17, 2022) (unpublished). A defense based on insufficient service is personal to the party to be served, and a different party may not raise insufficient service on another party's behalf. See State Farm Mut. Auto. Ins. Co. v. Dyer, 19 F.3d 514, 520–21 (10th Cir. 1994) ("[A]ny alleged defect in the district court's jurisdiction over [the party] was a personal defense that

4

could not be raised for him by another party."); Bekris v. Greek M/V Aristoteles, 437 F.2d 219, 220 (4th Cir. 1971) (stating "inadequacy of service of process" and "lack of personal jurisdiction" are "personal defenses"); Revilla v. H&E Equip. Servs., Inc., No. 2:20-CV-194, 2020 WL 9259087, at *1 n.2 (S.D. Tex. Oct. 6, 2020) (unpublished); Thunder Mountain Custom Cycles, Inc. v. Thiessen, No. 06-cv–2527-EWN-BNB, 2008 WL 618898, at *9 (D. Colo. Mar. 5, 2008) (unpublished).

Storm Team and MUMC executed a written agreement assigning Storm Team's rights under MUMC's insurance policy with Church Mutual back to MUMC, including "any and all breach of contract and tort claims that may arise." [D.E. 25-3]. MUMC knows that this litigation concerns claims regarding work to repair damage to MUMC's property. See [D.E. 26-2] (emails discussing subpoenas served on MUMC and its pastor); cf. Scott v. Md. State Dep't of Labor, 673 F. App'x 299, 304 (4th Cir. 2016) (per curiam) (unpublished); Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984).[2] MUMC has not raised insufficient service of process as a defense, and Church Mutual may not raise it on MUMC's behalf. Moreover, Church Mutual does not argue that Storm Team failed to serve Church Mutual, an existing party, with the motion to substitute in accordance with Rule 5. See Fed. R. Civ. P. 5(b)(2)(E), 23(a)(3), 23(c).

Additionally, Church Mutual argues the court should deny Storm Team's motion to substitute because Storm Team retains a financial interest in this lawsuit. See [D.E. 26] 6–7. Specifically, Church Mutual argues Storm Team retains a financial interest in the litigation because the reassignment back to MUMC requires MUMC "to hand over any payments to Storm Team." Id. at 6 (emphasis omitted). But this argument overstates the language in the Storm Team-to-MUMC

---

[2] Moreover, this is not a case where the substitution is adversarial—e.g., a plaintiff attempting to substitute a nonparty as a new defendant in the lawsuit. Rather, Storm Team moves to substitute MUMC in place of itself, not in the place of Church Mutual.

5

agreement. That agreement only states that MUMC agrees to use Storm Team as its general contractor for repairs of the storm damage that gave rise to this lawsuit. See [D.E. 25-3]. In the agreement, MUMC also authorizes Church Mutual to pay Storm Team "[t]o the extent any work is covered" by MUMC's policy with Church Mutual. Id. This lawsuit primarily concerns the appraisal provision in the insurance policy, see Compl. [D.E. 1], and whether Church Mutual is liable for breach of contract under the policy. See Countercl. [D.E. 9] 11–12. These issues concern the rights and obligations of Church Mutual vis-á-vis MUMC to determine who will pay for which repairs to MUMC's property. To the extent Storm Team retains a financial interest, that interest is getting paid for its work, whether by Church Mutual under the policy or by MUMC, who hired Storm Team to evaluate and complete the repairs. See [D.E. 25-3]. Storm Team's interest in being paid by Church Mutual or MUMC, without more, does not suffice to deny Storm Team's motion to substitute.

Given Storm Team's assignment of its interests back to MUMC, granting Storm Team's motion to substitute will facilitate the litigation. Thus, the court grants Storm Team's motion to substitute and orders that MUMC be substituted as the defendant and counterclaimant in this lawsuit in place of Storm Team.

## II.

Because the court grants Storm Team's motion to substitute, the court construes the motion to amend as MUMC's motion to amend its answer and counterclaim. Many of the proposed amendments merely substitute MUMC's name for Storm Team's name. However, MUMC also seeks to reassert the UDTPA claim that the court dismissed without prejudice in its November 30, 2021 order. See [D.E. 24] 3; [D.E. 25-1] 12–14. Church Mutual opposes the motion to amend, arguing that amendment is futile, will cause undue delay, and would prejudice Church Mutual. See [D.E. 26] 7–12.

6

Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts should construe Rule 15 liberally to "give[] effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986); see Moore v. Equitrans, L.P., 27 F.4th 211, 218 (4th Cir. 2022); Laber, 438 F.3d at 426–27. Whether to grant or deny leave to amend is within the trial court's discretion. See Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 439 (4th Cir. 2011); Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 940–41 (4th Cir. 1995).

## A.

Church Mutual argues that allowing MUMC to amend its answer and counterclaims to reassert its UDTPA claim would be futile. Specifically, Church Mutual argues that because MUMC is joining the lawsuit as a substitute for Storm Team, and Storm Team lacks standing to bring a UDTPA claim, MUMC also lacks standing to bring a UDTPA claim. See [D.E. 26] 8–10.

An amendment is futile if it is "clearly insufficient or frivolous on its face." Johnson, 785 F.2d at 510; see Kramer v. Omnicare ESC, LLC, 307 F.R.D. 459, 463–64 (D.S.C. 2015); Johnson v. Peaden, No. 4:06-CV-214-D, 2007 WL 9718396, at *3 (E.D.N.C. July 9, 2007) (unpublished). An amendment meets this standard if it "fails to state a claim under the applicable rules and accompanying standards," including the Federal Rules of Civil Procedure. Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011); see United States ex rel. Wilson v. Kellogg Brown

7

& Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008); Kramer, 307 F.R.D. at 464. Thus, an amendment is futile if the amendment would fail to state a claim upon which relief can be granted. See, e.g., Kellogg Brown & Root, Inc., 525 F.3d at 375; Massenburg v. Innovative Talent Sols., Inc., No. 5:16-CV-957-D, 2019 WL 441172, at *9 (E.D.N.C. Feb. 4, 2019) (unpublished), aff'd, 779 F. App'x 174 (4th Cir. 2019) (per curiam) (unpublished), cert. denied, 141 S. Ct. 1055 (2021). Whether an amendment states a claim upon which relief can be granted depends on whether the amendment is legally and factually sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562–63, 570 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Massenburg, 2019 WL 441172, at *9; Kramer, 307 F.R.D. at 464 ("[T]he futility analysis under Rule 15(a) necessarily requires a preliminary assessment of the allegations of the proposed amendment in light of the substantive law on which the additional claims are based.").

Church Mutual argues that allowing MUMC to amend its counterclaims to reassert its UDTPA claim is futile because MUMC cannot assert that claim as Storm Team's assignee. See [D.E. 26] 8–10. Although Church Mutual is correct that MUMC cannot assert the claim as Storm Team's assignee, MUMC is not precluded from asserting the UDTPA claim in its own right. On July 19, 2019, MUMC purported to assign to Storm Team its interests, including any causes of action, concerning the storm damage MUMC's property incurred on May 31, 2019. See [D.E. 1-2]. Under North Carolina law, actions arising from a contract generally are assignable, but tort claims are not. See N.C. Gen. Stat. § 1-57; Atl. Coast Mech., Inc. v. Arcadis, Geraghty & Miller of N.C., Inc., 175 N.C. App. 339, 343, 623 S.E.2d 334, 338 (2006).[3] For causes of action that may be

---

[3] A tort claim itself is not assignable, but the proceeds of such a claim are assignable. See Charlotte-Mecklenburg Hosp. Auth. v. First of Ga. Ins. Co., 340 N.C. 88, 91, 455 S.E.2d 655, 657 (1995). That distinction is not relevant here, because the assignment from MUMC to Storm Team purported to assign the entire claim. See [D.E. 1-2].

8

assigned, a party may completely assign a claim to one party or make partial assignments of that claim to multiple parties. See Booker v. Everhart, 294 N.C. 146, 156, 240 S.E.2d 360, 366 (1978), overruled on other grounds by M.E. v. T.J., No. 18A21, 2022 WL 729519 (N.C. 2022). The parties agree that under North Carolina law, a UDTPA claim is the type of personal tort claim that is not assignable. See Exact Sciences Corp. v. Blue Cross & Blue Shield of NC, No. 1:16CV125, 2017 WL 1155807, at *11 (M.D.N.C. Mar. 27, 2017) (unpublished); Revolutionary Concepts, Inc. v. Clements Walker, PLLC, 227 N.C. App. 102, 107, 744 S.E.2d 130, 134 (2013); Horton v. New South Ins. Co., 122 N.C. App. 265, 269, 468 S.E.2d 856, 858 (1996); [D.E. 12] 3–4; [D.E. 16] 2; [D.E. 24] 2.

The relevant claims are the breach of contract counterclaim Storm Team originally asserted against Church Mutual and the UDTPA claim MUMC now seeks to reassert in an amended answer and counterclaims. Storm Team only had a right to bring claims that MUMC validly assigned to it. According to their agreement, MUMC completely assigned its breach of contract claim to Storm Team consistent with North Carolina law. However, because UDTPA claims are not assignable, MUMC never transferred any interest in that claim to Storm Team, the broad language in the parties' agreement notwithstanding. Thus, when Storm Team transferred its interest back to MUMC, Storm Team validly reassigned the breach of contract claim back to MUMC. But nothing in the Storm Team-to-MUMC reassignment affected the UDTPA claim because MUMC has had ownership of that claim throughout this litigation. Put differently, Storm Team had no interest in the UDTPA claim to transfer back to MUMC because MUMC never assigned Storm Team such an interest in the first place. See Sprouse v. N. River Ins. Co., 81 N.C. App. 311, 318, 344 S.E.2d 555, 561 (1986) ("An assignee cannot acquire any greater right than the assignor possessed.").

As for the breach of contract claim, MUMC is substituting into this lawsuit under Rule 25(c)

9

as Storm Team's assignee. Nothing about that substitution changes the merits of the breach of contract claim. MUMC is merely stepping into Storm Team's shoes as Storm Team's assignee. See Citibank, 382 F.3d at 32; Corbin v. Blankenburg, 39 F.3d 650, 654 (6th Cir. 1994); Minn. Mining & Mfg. Co. v. Eco Chem, Inc., 757 F.2d 1256, 1263 (Fed. Cir. 1985); Molina v. Faust Goetz Schenker & Blee, LLP, 230 F. Supp. 3d 279, 285–86 (S.D.N.Y. 2017).

But as for the UDTPA claim, MUMC seeks to assert the claim in its own right, not as an assignee. Thus, MUMC is functionally asking the court to be joined as a party that seeks relief "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" giving rise to the lawsuit because common questions of fact concern both the breach of contract claim it prosecutes as an assignee substituted into this lawsuit and the UDTPA claim it seeks to assert in its own right. Fed. R. Civ. P. 20(a)(1); see Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); Fed. R. Civ. P. 24(b)(1)(B) ("[T]he court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."). If MUMC's unfair and deceptive trade practices claim is not futile on the merits, the court finds that allowing MUMC to assert the claim in its own right is appropriate given "the impulse [ ] toward entertaining the broadest scope of action consistent with fairness to the parties." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966). Moreover, allowing MUMC to join the lawsuit in its own right to assert its UDTPA claim comports with the need "to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." Saval v. BL, Ltd., 710 F.2d 1027, 1031 (4th Cir. 1983) (quotation omitted); see Urena v. Nationwide Ins. Co., No. 2:13-cv-03544-DCN, 2017 WL 735583, at *5 (D.S.C. Feb. 24, 2017) (unpublished), amended, 2017 WL 3142517 (D.S.C. June 16, 2017) (unpublished); Crawford v. Newport News Indus. Corp., No. 4:14cv130, 2016 WL 11673840, at *1

10

(E.D. Va. Sept. 1, 2016) (unpublished); Bodnar v. Jackson, No. 1:14CV120, 2014 WL 5426392, at

*1 (W.D.N.C. Oct. 23, 2014) (unpublished); John S. Clark Co. v. Travelers Indem. Co., 359 F. Supp.

2d 429, 440 (M.D.N.C. 2004); see also [D.E. 25] 4 (stating MUMC may "fil[e] a separate additional

lawsuit against Church Mutual" absent its ability to substitute into this lawsuit and to assert its

UDTPA claim). Thus, allowing MUMC to amend its answer and counterclaim to assert a UDTPA

claim is not futile merely because MUMC is a substitute party for Storm Team as to the breach of

contract counterclaim. Rather, because MUMC always owned its UDTPA claim, MUMC may assert

the claim in its own right. And the court finds that allowing MUMC to do so promotes judicial

economy and "the final determination of disputes, thereby preventing multiple lawsuits." Saval, 710

F.2d at 1031.

The court has considered whether MUMC's proposed UDTPA claim is futile on the merits.

See Iqbal, 556 U.S. at 677–78; Twombly, 550 U.S. at 562–63, 570; Giarratano, 521 F.3d at 302;

Massenburg, 2019 WL 441172, at *9. After considering the record and the parties' arguments, the

claim is not "clearly insufficient or frivolous on its face." Johnson, 785 F.2d at 510. Whether the

claim will survive Church Mutual's inevitable motion for summary judgment is an issue for another

day. Cf. Sasso v. Tesla, No. 5:21-CV-24-D, 2022 WL 363850, at *9–10 (E.D.N.C. Feb. 7, 2022);

Draughon v. Smith, No. 7:21-CV-00101-D, 2021 WL 4927981, at *8–9 (E.D.N.C. Oct. 21, 2021)

(unpublished); Page v. Corvias Grp., LLC, No. 5:20-CV-336-D, 2021 WL 4163562, at *8 (E.D.N.C.

Sept. 13, 2021) (unpublished); Neshat v. Nationwide Mut. Fire Ins. Co., No. 5:20-CV-664-D, 2021

WL 2168906, at *3, 7–8 (E.D.N.C. May 27, 2021) (unpublished); Michael Borovsky Goldsmith LLC

v. Jewelers Mut. Ins. Co., 359 F. Supp. 3d 306, 313–14 (E.D.N.C. 2019).

B.

Church Mutual argues that even if MUMC's proposed amendment is not futile, granting

11

leave to amend would prejudice Church Mutual and cause undue delay. See [D.E. 26] 10–12. Whether an amendment is prejudicial depends on "the nature of the amendment and its timing." Laber, 438 F.3d at 427; see Adbul-Mumit v. Alexandria Hyundai, LLC, 896 F.3d 278, 293 (4th Cir. 2018). A court considers the "particular circumstances presented, including previous opportunities to amend and the reason for the amendment." Adbul-Mumit, 896 F.3d at 293 (quotation omitted); see Scott v. Family Dollar Stores, Inc., 733 F.3d 105, 118–19 (4th Cir. 2013). Delay alone is not a reason to deny a motion to amend. See Mayfield v. NASCAR, Inc., 674 F.3d 369, 379 (4th Cir. 2012); Laber, 438 F.3d at 427; Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980). However, the farther a case has progressed, the more likely the amendment will be prejudicial. See Moore, 27 F.4th at 218; Mayfield, 674 F.3d at 379; Newport News Holding Corp., 650 F.3d at 439; Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 193 (4th Cir. 2009); Laber, 438 F.3d at 427. An amendment is often prejudicial when it "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [nonmoving party and] is offered shortly before or during trial." Johnson, 785 F.2d at 509; see Moore, 27 F.4th at 219; Laber, 438 F.3d at 427. However, an amendment is likely not prejudicial "if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." Laber, 438 F.3d at 427; see Mayfield, 674 F.3d at 379 ("The amount of discovery is also a relevant consideration . . . .").

Allowing MUMC to amend its answer and counterclaims may cause Church Mutual some prejudice, but not enough to deny the motion to amend. Discovery has not yet closed, and the court recently granted Church Mutual's motion to extend the discovery deadlines. See [D.E. 28]. Moreover, although MUMC seeks to assert a new cause of action, allowing that amendment should not require significant additional discovery. MUMC's proposed UDTPA claim concerns its storm-

12

damage claim under its policy with Church Mutual. The claim focuses on alleged misrepresentations, alleged lack of good faith in the parties' negotiations, and Church Mutual's alleged failure to pay under the policy. See [D.E. 25-1] ¶ 44. Those allegations are closely related to the facts underlying Church Mutual's claims against MUMC and MUMC's existing breach of contract counterclaim, for which the parties have already been conducting discovery. And because Storm Team asserted a UDTPA claim in its initial answer and counterclaims, the claim is not a surprise to Church Mutual. Thus, allowing the claim will not require significant new discovery, and any prejudice is minimal.

In sum, the court grants MUMC's motion for leave to amend, finding that allowing MUMC to amend its answer and counterclaims is not futile, overly prejudicial, or done in bad faith. MUMC shall have until April 14, 2022, to file its amended answer and counterclaims.

## III.

In sum, the court GRANTS Storm Team's motion to substitute [D.E. 25], ORDERS that Murfreesboro United Methodist Church be substituted as the defendant and counterclaimant in this lawsuit in place of Storm Team, and GRANTS Murfreesboro United Methodist Church's motion for leave to amend [D.E. 25]. Not later than April 14, 2022, Murfreesboro United Methodist Church SHALL file its amended answer and counterclaims.

SO ORDERED. This 31 day of March, 2022.

_J. Dever_

JAMES C. DEVER III
United States District Judge

Case 2:21-cv-00031-D  Document 29  Filed 03/31/22  Page 13 of 13